```
                                                    FILED

                                                  MAR 29 2011

                                            CLERK. US DISTRICT COURT
                                                  NORFOLK. VA
```

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | |
|---|---|
| EQUAL EMPLOYMENT<br>OPPORTUNITY COMMISSION,   ) | CIVIL ACTION NO. *2:11cv183* |
|               ) | |
|      Plaintiff,     ) | |
|               ) | |
|      v.           ) | **COMPLAINT** |
|               ) | |
| STANLEY'S MARINE & INDUSTRIAL  ) | |
| SERVICES, LLC,        ) | **JURY TRIAL DEMAND** |
|               ) | |
|      Defendant.     ) | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of sex (female) and retaliation, and to provide appropriate relief to Darlene Snead, Eva Winston, Cameron Gladden, Krystal Adams, Angela Ford, and Elizabeth Taylor (hereafter referred to as "Claimants"), who were adversely affected by such practices.   Specifically, the U.S. Equal Employment Opportunity Commission (the "Commission") alleges that defendant Stanley's Marine & Industrial Services, LLC ("Defendant"), discriminated against the Claimants by subjecting them to sexual harassment that created a sexually hostile work environment because of their sex, female.   The Commission further alleges that Claimants Darlene Snead, Cameron Gladden, Krystal Adams, Angela Ford, and Elizabeth Taylor were discharged in retaliation for their complaints about the sexual harassment.

## JURISDICTION AND VENUE

1.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5(f)(1) and (3) ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.     The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of Virginia.

## PARTIES

3.     Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII of the Civil Rights Act of 1964, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §2000e-5(f)(1) and (3).

4.     At all relevant times, Defendant was a corporation doing business in the State of Virginia and the City of Norfolk, and continuously had at least fifteen employees.

5.     At all relevant times, Defendant was an employer engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e (b), (g), and (h).

## STATEMENT OF CLAIMS

6.     More than thirty days prior to the institution of this lawsuit, each of the Claimants filed a charge with the Commission alleging violations of Title VII by Defendant.  All conditions precedent to the institution of this lawsuit have been fulfilled.

7.     From around November 2007 until at least March 2009, Defendant engaged in unlawful employment practices at the Northrop Grumman facility in Newport News, Virginia where it was a subcontractor, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. §2000e-2(a)(1) and Section 704(a), 42 U.S.C. §2000e-3(a).  Specifically, Defendant discriminated against the Claimants based on their sex, by subjecting them to a sexually hostile work environment which included sexual conduct such as sexual comments, sexual touching and

sexual gestures. The offensive sexual conduct was perpetrated by two of Defendant's male supervisors who had direct supervisory authority over the Claimants. As further described below the offensive sexual conduct was unwelcome to the Claimants.

8.    The Claimants worked for Defendant primarily as insulators and/or laborers. During the relevant period, Defendant did not have a sexual harassment policy. Moreover, some employees who reported the sexual harassment were discharged. Specifically:

a.    <u>Darlene Edmonds Snead</u> – Claimant Snead, who worked as an insulator and later as head taper/trainer, was subjected to sexual harassment by her male supervisor from around November 2007 until shortly before her discharge in March 2008. At least one to three times per week the male supervisor subjected Snead to sexual comments and/or touching. The sexual conduct the male supervisor subjected Snead to included but was not limited to the male supervisor touching Snead's breasts and buttocks, pressing his groin into her buttocks, and asking Snead for sex. On one occasion the male supervisor stood over Snead and made humping motions near her head. On this occasion, Snead fought the supervisor off with a hard hat. On other occasions, Snead refused to have sex with the male supervisor and pulled away from him when he touched or attempted to touch her.

Snead also observed the male supervisor sexually harassing other female employees. Additionally, Snead received a complaint from Claimant Gladden that Gladden was being sexually harassed by the male supervisor. In or around February 2008, Snead complained to the site superintendent for Northrop Grumman about the sexual harassment by the male supervisor. Snead was discharged approximately a week and a half later after Defendant became aware that she had reported the sexual harassment to Northrop Grumman. Snead was discharged because of her complaint.

b.     Eva Winston – Claimant Winston, who worked as an insulator helper, was subjected to sexual harassment by the same male supervisor as Claimant Snead, who was also Winston's direct supervisor. Specifically, around December 2007, Winston observed the male supervisor making humping motions directed at several female employees. When the male supervisor attempted to hump Winston, Winston grabbed a co-worker to put him between herself and the male supervisor. In early February 2008, the male supervisor began making sexual comments to Winston and touching Winston in a sexual way. On at least one occasion the male supervisor told Winston to expose her breasts and proposed putting his "dick" in Winston's mouth. Winston responded no to both of these requests. On another occasion in February 2008, the male supervisor summoned Winston to an isolated area and tried to pull her shirt down. The male supervisor then grabbed Winston's hand and forced her to touch his penis. Winston complained about the sexual harassment to Claimant Snead and to another supervisor for Defendant. After Claimant Snead took complaints about sexual harassment to Northrop Grumman management, including Winston's complaint, Winston was transferred to another department.

c.     Cameron Gladden – Claimant Gladden, who worked as an insulator and later as a cleaner, was subjected to sexual harassment by the same male supervisor identified above, who was also Gladden's direct supervisor. The harassment occurred from around February 5, 2008 until around March 22, 2008, and included but was not limited to unwelcome sexual comments and touching. The male supervisor asked Gladden to show him her breasts; suggested that they could "fool around;" told Gladden that he could turn her on; told Gladden to "spread 'em" out (referring to her legs); and on at least one occasion told her that he could take her to a secluded place on the ship where they were working so that they could have sex. The

4

male supervisor made comments to Gladden such as, "look at that ass," and made offensive gestures at least once daily, which included leering at her with his tongue sticking out and grabbing his crotch.

Gladden reported the sexual harassment to Claimant Snead and to Gladden's second level supervisor. Sometime after Gladden reported the harassment to Snead, as described above, in or around February 2008, Claimant Snead complained about the supervisor's harassment of female employees to Northrop Grumman management. Defendant became aware of Snead's complaint. Despite these complaints, the male supervisor continued to sexually harass female employees, including Gladden. For example, around February or March 2008, the male supervisor exposed his penis to Gladden on one occasion and asked her for sex. He also rubbed his groin against Gladden in a humping motion. On or around March 19, 2008, Gladden was discharged because of her complaints about the sexual harassment.

        d.     Krystal Adams – Claimant Adams, who worked as a painter, was subjected to sexual harassment by her male supervisor. This male supervisor is different from the male supervisor who is identified in paragraphs 8(a) – (c) above, and is hereafter referred to as "Male Supervisor 2." Male Supervisor 2 subjected Adams to unwelcome sexual comments beginning around November 2008. On one occasion, Male Supervisor 2 told Adams, who is black, that she did not understand the things he would do to her if he were 20 years younger, and that he once "had a black girl" and that she (the black girl) enjoyed everything he did to her. Adams immediately reported the sexual comments to her other supervisor. Adams was laid off a short while later, in or around December 2008.     Around mid-February 2009, Adams was recalled and within approximately 2 weeks she was placed to work with Male Supervisor 2 again. In March 2009, the Male Supervisor 2 told Adams that he masturbates while watching

porn and discussed other sexual things with her, including his sex life and the sexual positions that he likes. Adams again reported the harassment to another supervisor. Two to four days after complaining about the sexual harassment, Adams along with Claimants Ford and Taylor (see below) gave written statements complaining about the sexual harassment to Northrop Grumman's site superintendant. Defendant became aware of the complaints. Shortly thereafter, Claimants Adams, Ford and Taylor were discharged because of their complaints.

                e.      <u>Angela Ford</u> – Claimant Ford, who worked as a painter, was subjected to sexual harassment by Male Supervisor 2, who was her direct supervisor, beginning around November 2008. The sexual harassment included but was not limited to unwelcome sexual comments. Male Supervisor 2 asked her if she had ever tried putting ice up "[her] pussy" and asked her to try it with him. Male Supervisor 2 told Ford, who is black, that he had slept with a "black girl" before and that she loved it.

In March 2009, Ford was temporarily assigned to work with the male supervisor identified in paragraph 8(a) – (c) above. During that time, the male supervisor made sexually offensive comments to Ford. For example, on one occasion, the male supervisor told Ford he could perform oral sex on her. He also held his hand out toward her stating that it was his "pimp hand, for [his] girls." On another occasion the male supervisor inquired how much she charged for a "blow job."

On or about March 27, 2009, Claimant Ford, along with Claimants Adams and Taylor, gave written statements complaining about the sexual harassment to Northrop Grumman's site superintendant. Defendant became aware of the complaints. Shortly thereafter, Claimants Ford, Adams and Taylor were discharged because of their complaints.

  f.    Elizabeth Taylor – Claimant Taylor, who worked as a painter, was subjected to sexual harassment by Male Supervisor 2, who was her direct supervisor beginning around November 2008.  The sexual harassment included but was not limited to, unwelcome sexual comments and touching.  More specifically, on a weekly basis Male Supervisor 2 told Taylor that he "liked" her.  Male Supervisor 2 also stood close to Taylor so that when she bent over her buttocks touched him.  Nearly daily, Male Supervisor 2 told Taylor that she was cute or otherwise commented on her appearance.  On one occasion, Male Supervisor 2 told Taylor that he gave good massages and asked to give her one.  Male Supervisor 2 also told Taylor, who is black, that he used to date a "black girl" and that he liked them "thick, like [Taylor]."  He also simulated oral sex with his tongue extended, and told Taylor that he worked well with his tongue. Taylor rejected Male Supervisor 2's advances and comments.

In March 2009, Taylor was temporarily supervised by the male supervisor identified in paragraphs 8(a) – (c), who made sexually offensive comments to Taylor.  The male supervisor asked Taylor for a date, told her that she was cute or otherwise commented on her appearance, and stuck his tongue out at Taylor in a sexually suggestive manner.  This type of conduct occurred on a daily or almost daily basis.  On one occasion when the male supervisor stuck out his tongue he told Taylor that he "work[ed] well with it" – suggesting oral sex—and then took out his credit card and offered to pay Taylor for sex.

On or about March 27, 2009, Claimant Taylor, along with Claimants Adams and Ford, gave written statements complaining about the sexual harassment to Northrop Grumman's site superintendant.  Defendant became aware of the complaints.  Shortly thereafter, Claimants Taylor, Adams and Ford were discharged because of their complaints.

9.    The effect of the practices complained of above has been to deprive the Claimants of equal employment opportunities and otherwise adversely affect their status as employees because of their sex, female.

10.    The effect of the practices complained of above has been to deprive Claimants Snead, Gladden, Adams Ford and Taylor, of equal employment opportunities and otherwise adversely affect their status as employees because of their opposition to practices made unlawful under Title VII.

10.    The unlawful employment practices complained of above were intentional.

11.    The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of the Claimants.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.    Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from maintaining a sexually hostile work environment or from any other employment practice that discriminates on the basis of sex, and from retaliating against employees who oppose unlawful discrimination, make a charge of unlawful discrimination, or participate in an investigation of unlawful discrimination.

B.    Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for women, and which eradicate the effects of its past and present unlawful employment practices.

C.    Order Defendant to make the Claimants Snead, Gladden, Ford, Adams and Taylor whole by providing appropriate back pay with prejudgment interest, in amounts to be determined

at trial, and other affirmative relief necessary to eradicate the effects of the unlawful employment practices described above, including but not limited to reinstatement or front pay.

D.      Order Defendant to make the Claimants whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

E.      Order Defendant to make the Claimants whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of above above, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem and loss of civil rights, in amounts to be determined at trial.

F.      Order Defendant to pay the Claimants punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

G.      Grant such further relief as the Court deems necessary and proper in the public interest.

H.      Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

DATED this the 29th day of March, 2011.

Respectfully submitted,

P. DAVID LOPEZ
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

TRACY HUDSON SPICER
Supervisory Trial Attorney
Equal Employment Opportunity Commission
131 M Street, N.E.
Washington, D.C.  20507

LYNETTE A. BARNES
Regional Attorney
Charlotte District Office
129 W. Trade Street, Suite 400
Charlotte, NC  28202


AMY E.GARBER
VA Bar No. 37336
Trial Attorney
Equal Employment Opportunity Commission
Norfolk Local Office
Federal Building
200 Granby Street, Suite 739
Norfolk, Virginia 23510
Telephone:  (757) 441-3134
Facsimile:  (757) 441-6720
mailto:amy.garber@eeoc.gov


**ATTORNEYS FOR PLAINTIFF**